Dr. Israel GANAPOLSKY, Plaintiff, Appellant,

v.

BOSTON MUTUAL LIFE INSURANCE COMPANY, et al., Defendants, Appellees.

No. 96–2255.

United States Court of Appeals, First Circuit.

Heard Nov. 5, 1997.

Decided March 17, 1998.

Rehearing Denied April 14, 1998.

---

Kevin G. Little, with whom David Efrón, San Juan, PR, and Law Offices David Efrón, were on brief for appellant.

Guillermo de Guzmán–Vendrell, Hato Rey, PR, with whom Victoria D. Pierce and Cancio, Nadal, Rivera & Díaz, San Juan, PR, were on brief, for appellees.

Before TORRUELLA, Chief Judge, CYR, Senior Circuit Judge, LYNCH, Circuit Judge.

TORRUELLA, Chief Judge.

Israel Ganapolsky ("Ganapolsky"), a medical doctor from Puerto Rico, filed this action against his insurer, Boston Mutual Life Insurance Company ("Boston Mutual"), to recover under an accidental death and dismemberment policy for the partial amputation of his left foot. Boston Mutual had denied Ganapolsky's claim for the loss. On a stipulated record, the district court entered judgment in favor of Boston Mutual, and Ganapolsky appeals. We affirm.

The following facts are essentially undisputed. On June 5, 1992, while in New York City, Ganapolsky accidentally injured his left foot when he tripped on a two-inch step at the entrance to the men's room of a theater. The next day, Ganapolsky continued with his planned trips to Turkey and Israel, but was forced to cut his travel short and return to Puerto Rico after approximately two weeks due to increasing problems with his foot. At the hospital in Puerto Rico where he was admitted, Ganapolsky was diagnosed with gangrene in his left foot and a below-the-knee amputation was recommended. In addition, for the first time, it was discovered that Ganapolsky had diabetes. Ganapolsky travelled to Union Memorial Hospital in Baltimore, Maryland to seek treatment for his foot. There, his doctor performed a "Chopart" amputation, which, as the district court aptly observed, "can best be visualized as a cut going from the point on top of the foot approximately where a man's shoelace is knotted down to the bottom of the foot, leaving the heel." *Ganapolsky v. Boston Mut. Life Ins. Co.*, Civ. No. 94–2229, slip op. at 2 (D.P.R. July 3, 1996).

Thereafter, Ganapolsky filed a claim with Boston Mutual for benefits under a group accidental death and dismemberment policy (the "policy") for the Chopart amputation of his left foot. Boston Mutual denied the claim for the following reasons: first, the policy required that the loss of a foot be a complete severance through or above the ankle joint, and Ganapolsky's amputation was not one through or above the ankle joint; and second, the policy excludes loss resulting from sickness, disease or bodily infirmity, and in the instant case, diabetes and diabetic neuropathy were instrumental causes of the eventual amputation.

We review a district court's factual determinations for clear error, *see Sullivan v. Young Bros. & Co., Inc.*, 91 F.3d 242, 246–47 (1st Cir.1996), and its legal determinations

*de novo, see Bercovitch v. Baldwin Sch., Inc.,* 133 F.3d 141, 147 (1st Cir.1998). The insurance policy at issue provides in relevant part:

> We agree to pay benefits for loss from bodily injuries:
>
> a)caused by an accident which happens while an insured is covered by this policy; and
>
> b)which, directly *and from no other causes,* result in a covered loss.

(Emphasis added.) The policy also excludes coverage for "loss resulting from ... [s]ickness, disease or bodily infirmity." Boston Mutual argues that this policy exclusion applies to the instant case, and thus, that it properly denied coverage. We agree. The trial judge concluded that the amputation did not come from the foot injury within the meaning of the policy language of 'directly and from no other causes.' "

In this action based on diversity jurisdiction, the substantive law of Puerto Rico governs. *See Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Under Puerto Rico law, an exclusion clause in an insurance contract is strictly construed and any ambiguity is resolved in favor of the insured. *See Pagan Caraballo v. Silva Delgado,* 122 P.R. Dec. 105, 110–11 (1988). However, where the language of the exclusion unambiguously supports the insurer, the court need not strain to find a construction favoring the insured. *See Marin v. American Int'l Ins. Co. of P.R.,* 137 P.R. Dec. ——, 94 J.T.S. 132 (Oct. 28, 1994).

Under the policy, as we previously noted, covered losses are only those resulting directly from accidents and *"from no other causes."* The exclusion clause specifically bars coverage for losses resulting from sickness, disease or bodily infirmity. According to *Couch on Insurance 2d* § 41:74, at 112 (Rev. ed.1982),

> If a disease or bodily condition exists and an accident occurs, ... it is sufficient if the accidental means would have solely caused some considerable injury had the disease or bodily condition not existed. But if no considerable injury at all would have resulted had the insured not been afflicted with the existing disease or condition, the

accidental means are not the sole cause of the injury.

*Id.* Here, we find that the worst possible injury Ganapolsky would have sustained from the accident, if he had not been a diabetic, was a fracture and dislocation of the foot. However, because of his disease, Ganapolsky's initial trauma to the foot progressed to gangrene, requiring the Chopart amputation of his foot. The record reflects that gangrene in the lower extremities is one hundred times more common in diabetics than in non-diabetics. Ganapolsky cannot escape the fact that his diabetes substantially contributed to his loss.

As the district court observed, Ganapolsky's argument that "but for" the accident, he would not have suffered the loss of his foot is unconvincing because, if that were the rule, "there could never be a causal contribution to injury by preexisting diseases." *Ganapolsky,* Civ. No. 94–2229, slip op. at 3. We apply instead Puerto Rico's concept of adequate causation. "Under Puerto Rico law, the Insurance Code of Puerto Rico, 26 L.P.R.A. §§ 101, *et seq.,* controls the interpretation of insurance contracts." *Nieves v. Intercontinental Life Ins. Co.,* 964 F.2d 60, 63 (1st Cir.1992). However, since the Insurance Code fails to provide a causation test, we turn to the Civil Code for guidance. *See id.* (observing that when Insurance Code fails to provide an interpretative approach for particular situation, Civil Code supplements it). Under the Civil Code, the concept of adequate causation is applicable to Puerto Rico tort law. *See Soto Cabral v. Commonwealth of Puerto Rico,* 138 P.R. Dec. ——, 95 J.T.S. 49 (April 21, 1995). A condition is an adequate cause if it ordinarily can be expected to produce the result at issue. *See id.* Ganapolsky's accident was not an adequate cause of his gangrene, since such an infection normally does not arise from tripping on a step.

For the first time on appeal, Ganapolsky contends that the exception to the sickness, disease or bodily infirmity exclusion applies. That exception states that "[b]acterial infection resulting from an accidental cut or wound ... are not excluded." Ganapolsky's argument is that the general exclusion

did not apply because of the exception to it for bacterial infections; his accident, he says, caused a bacterial infection which caused the gangrene, which led to the amputation. However, "[i]f any principle is settled in this circuit, it is that, absent the most extraordinary circumstances, legal theories not raised squarely in the lower court cannot be broached for the first time on appeal." *Teamsters, Local No. 59 v. Superline Transp. Co., Inc.*, 953 F.2d 17, 21 (1st Cir. 1992). Therefore, we decline to address this argument.

In addition, having found that Ganapolsky's loss is not covered under the terms of the insurance contract, we need not discuss whether the Chopart amputation of his foot constituted a loss under the policy.

For the foregoing reasons, the district court's opinion and judgment is *affirmed.*

Costs to be assessed against appellant.